306 S.C. 368 (1991)
412 S.E.2d 394
Timothy LAWRENCE, Richard Kaiser, Deborah Kaiser and Maureen Deaton as representatives of the class of persons who are members of the Home School Legal Defense Association, Appellants
v.
SOUTH CAROLINA STATE BOARD OF EDUCATION, Respondent.
23526
Supreme Court of South Carolina.
Heard October 31, 1991.
Decided December 9, 1991.
*369 Michael P. Farris and Dewitt T. Black, of Home School Legal Defense Ass'n of Paeonian Springs, Va., for appellants.
Chief Deputy Attorney General Joseph D. Shine and Assistant Attorney General J. Emory Smith, Jr., Columbia, for respondent.
Heard Oct. 31, 1991.
Decided Dec. 9, 1991.
GREGORY, Chief Justice:
Appellants commenced this action to enjoin enforcement of S.C. Code Ann. § 59-65-40(A)(1)(a)(1990) which regulates home schooling programs. The statute requires parents holding only a high school diploma to pass a basic skills examination known as the Education Entrance Examination (EEE) in order to be approved for home schooling. The trial judge found the EEE was properly validated for use in testing home school instructors. We reverse.
Home schooling is a statutorily provided alternative to compulsory attendance at a public or private school. See S.C. Code Ann. § 59-65-10(1990).[1] The threshold issue here is the degree of regulation permissible in balancing the State's interest in compulsory education and the parents' recognized interest in the nurture and education of their children. In Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed. (2d) 15 (1972), the United States Supreme Court recognized the strength of both these interests but noted that where the parents' interest in education is secular in nature rather than religious, the State may constitutionally require compulsory education in a public or private school. 92 S.Ct. at 1542. The Court went on to hold that even where parents may exempt their children from school attendance on the ground of free exercise of religion, nothing "limit(s) the power of the State to promulgate reasonable standards" concerning the content of parent-provided education programs. 92 S.Ct. at 1543. We conclude under Yoder the State clearly has the *370 power to impose "reasonable standards" on home schooling programs which the State has chosen to offer as an alternative to compulsory school attendance.
Section 59-65-40(A)(1)(a) provides for approval of a home schooling program if the parent:
(a) holds at least a high school diploma or the equivalent general educational development (GED) certificate and, beginning in the 1989-90 school year, attains a passing score on the basic skills examination developed pursuant to Section 59-26-20(b)(1)[2]after the State Department of Education has validated the test for use with home schooling parents.... (Emphasis added).[3]
Section 59-65-40 conditions use of the basic skills examination upon its validation for home schooling use. Thus, the statute ensures that use of this particular test is reasonable since validation requires an appraisal of the examination's suitability to test an examinee's ability in a given context. If the validation process is itself unreasonable, however, the examination is not properly validated and the requirement that a parent pass such an examination is unenforceable under § 59-65-40(A)(1)(a). Appellants challenge the validation process on several grounds. We hold the validation process implemented here does not meet a standard of reasonableness.
The facts surrounding the validation process are as follows. The basic skills examination or EEE developed by the Board of Education is used to test entrance level education students. The EEE tests only basic ability in reading, writing, and mathematics; it does not test teaching ability. After passage of the home schooling statute, the Department of Education contracted with IOX Assessment Associates to evaluate the EEE's suitability to test home schooling instructors. IOX assembled a panel of thirty-three members; seventeen panelists were home schoolers, the remaining sixteen were public *371 school and college teachers. The panelists were asked to evaluate each item on the EEE for (1) task-relatedness and (2) bias. For task-relatedness, the panelists were asked whether the knowledge or skill needed to answer the particular item on the EEE was "a necessary prerequisite" for home schoolers. To evaluate bias, panelist were asked whether the item on the EEE would offend or unfairly penalize any group of examiners based on personal characteristics such as gender, ethnicity, religion, or socio-economic status.
Panelists who were not home schoolers were given no description of the requirements for successful home schooling. These sixteen panelists were not familiar with home schooling or were never asked if they knew anything about it.
IOX evaluated the responses given by the entire panel and score them as follows:

 1) task-relatedness: 2) bias:
 reading 84% reading 10%
 math 79% math 4%
 writing 75% writing 39%

The responses given by the sub-group consisting only of panelists who were home schoolers were scored as follows:

 1) task-relatedness: 2) bias:
 reading 74% reading 12%
 math 66% math 8%
 writing 56% writing 50%

IOX evaluated the scores given by the entire panel and reported to the Department of Education that these scores were acceptable to validate the EEE for use in home schooling. The Department subsequently validated the EEE as provided in § 59-65-40(A)(1)(a).
Appellants contend the validation is defective because panelists were given on "job analysis" or description of successful home schooling. Since sixteen of the thirty-three panelists knew nothing about home schooling, we agree with appellants it is manifestly unreasonable to rely on their evaluations of task-relatedness in validating the EEE. Task-relatedness evaluations required a panelist to judge whether the EEE item tested some knowledge or skill that was "a necessary prerequisite" to home schooling. Sixteen of the panelists were not qualified to make this evaluation since they were given no information as to what the prerequisites for home schooling were.
*372 Further, the noticeable discrepancy in task-relatedness scores for the sub-group consisting only of panelists who were home schoolers as compared to the entire group indicates the panelists' qualifications impacted on these scores. The scores from panelists who were public school and college teachers were 20-44% higher than the scores of home schooling panelists regarding task-relatedness. These statistics indicate that panelists with no knowledge of home schooling found the EEE items more task-related to home schooling than those panelists who were familiar with home schooling.
Board of Education relies heavily on two main arguments to justify use of the EEE. First, it contends the EEE is designed to test basic literacy which is an underlying qualification for teaching whether the educational setting is public school or home. This argument relies on the theory of validity generalization which means that the validity of a test established for one task may be assumed or generalized for another task if the tasks are reasonably similar. This argument overlooks one important fact: the statute itself specifically requires validation of the EEE for home schooling, indicating the legislature implicitly found the tasks of home schooling and public school teaching too similar to employ the validation of the EEE that was already done for public school teaching.
Board of Education also points to the fact that home schoolers who have taken the EEE have a high pass rate: 258 of 310 examinees have received a passing score. The fact that home schoolers can pass the EEE does not mean it is reasonable to require them to do so as a prerequisite for home schooling. At best, the high pass rate indicates the EEE requirement has infringed little on parents' entitlement to home schooling; it does not, however, justify the imposition of such a requirement. We find the State's validation process fails to meet a standard of reasonableness and the requirement that parents pass the EEE is unenforceable under 59-65-40(A)(1)(a) which conditions its use upon validation.
Reversed.
HARWELL, CHANDLER, FINNEY, and TOAL, JJ., concur.
NOTES
[1] Home schooling programs have their own attendance requirements since they must have an instructional day of at least four and one-half hours, excluding lunch and recesses, for at least one hundred eighty days per year. S.C. Code Ann. § 59-65-40(A)(2) (1990).
[2] The statutory reference to § 59-26-20(b)(1) is illogical and was found below to be intended as § 59-26-30(b)(1) which discusses the basic skills examination. Appellants have not appealed the trial judge's finding construing the statute in this regard.
[3] Parents who have earned a baccalaureate degree are not required to take the EEE for home schooling approval. S.C. Code Ann. § 59-65-40(A)(1)(b) (1990). Appellants have not challenged this disparity of treatment.